# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHALLENGE FISHERIES LLC, ) <br> QUINN FISHERIES INC., ) <br> CHARLES QUINN JR., and ) <br> CHARLES QUINN III, ) <br> ) <br> Defendants. ) | Civil Action No. <br><br><br><br> COMPLAINT |

## COMPLAINT

Plaintiff, the United States of America, acting at the request of the United States Coast Guard, files this Complaint and alleges the following:

## NATURE OF THE ACTION

1. This is a civil action brought by the United States against Challenge Fisheries LLC, Quinn Fisheries Inc., Charles Quinn Jr., and Charles Quinn III (collectively "Defendants"), seeking civil penalties and injunctive relief for multiple violations of Section 311 of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1321. The Complaint addresses Defendants' willful and grossly negligent discharges of oil, including fuel oil and oily bilge waste, from the commercial fishing vessel *Challenge* into New Bedford Harbor and other waters of the United States, and Defendants' related violations of the Coast Guard's pollution control regulations.

1

## JURISDICTION, AUTHORITY, AND VENUE

2. This Court has jurisdiction over this matter pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

3. Authority to bring this action is vested in the United States Department of Justice by, *inter alia*, 28 U.S.C. §§ 516 and 519.

4. Venue is proper in this District pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), (n), and 28 U.S.C. §§ 1391 and 1395(a), because the claims arose in this district and Defendants reside and do business in this district.

## DEFENDANTS

5. Defendant Challenge Fisheries LLC is a Massachusetts limited liability company with its business address in New Bedford, Massachusetts. The company owns the U.S.-flagged *Challenge* (Official Number: 595041). The *Challenge* is a commercial fishing vessel homeported in New Bedford. The vessel measures approximately 63 feet long and is approximately 43 gross tons. The vessel is used to catch sea scallops.

6. Defendant Quinn Fisheries Inc. is a managing member of Challenge Fisheries LLC and an operator of the *Challenge*. The company is incorporated in Massachusetts and has its headquarters in New Bedford.

7. Defendant Charles Quinn Jr. is a managing member of Challenge Fisheries LLC and the president of Quinn Fisheries Inc. He controls and directs the operations of both companies. He also operates and is a person in charge of the *Challenge* and is the responsible corporate officer for the CWA violations alleged in this Complaint. He resides in New Bedford, Massachusetts.

8. Defendant Charles Quinn Jr. manages five commercial fishing vessels through a network of companies, including Quinn Fisheries Inc.: (1) *Challenge*, (2) *Celtic*, (3) *Harvester*, (4) *Incentive*, and (5) *Patience*.

9. Defendant Charles Quinn III has acted as the "captain" of the *Challenge* and as an operator and person in charge of the vessel for multiple fishing voyages over the past two years. He resides in Dartmouth, Massachusetts.

## **FACTS**

10. Challenge Fisheries LLC has owned the vessel since at least 2007.

11. At all times relevant to this Complaint, Defendants Charles Quinn Jr., Quinn Fisheries Inc., and Charles Quinn III were the operators and persons in charge of the *Challenge*. They managed the operations of the *Challenge*, including handling and disposal of wastes, purchasing equipment for the vessel, managing the crew, scheduling fishing voyages, and coordinating the sale of the catch.

12. At all times relevant to this Complaint, Defendants knew that the *Challenge* lacked the equipment and capacity to retain on board all of the oily mixtures, as described below, generated while underway, that the *Challenge* regularly discharged oily mixtures overboard into the ocean during voyages and while in New Bedford Harbor, and that discharging oily mixtures overboard is unlawful.

13. Defendants nonetheless continued to operate the *Challenge* without adequate capacity to retain all of its oily mixtures on board and continued to discharge oily mixtures overboard.

14. Defendants had responsibility and authority to prevent or promptly correct the violations alleged in this Complaint but failed to take action to correct the violations.

**Fishing Voyages**

15. The *Challenge* does not have an oil-water separating system on board, and the *Challenge* lacks the capacity to store the quantity of oily mixtures generated on its typical fishing voyages.

16. Fuel oil and lube oil routinely leaked from machinery into the *Challenge*'s engine room bilge.

17. Water and other waste fluids that entered the engine room bilge commingled with the oil to form an oily mixture. Pathways for excess water to enter into the engine room bilge include a leaking shaft seal.

18. Rather than properly treat or store the engine room's oily bilge waste onboard the *Challenge*, Defendants routinely, on a daily or near-daily basis, pumped oily mixtures out of the engine room bilge into New Bedford Harbor while in port and into other waters of the United States during fishing voyages. This has been the typical oily waste disposal practice for the *Challenge* and was so during and after the fishing voyage that occurred between August 2 and August 13, 2017.

19. Defendants used an electric water pump to illegally discharge oily waste from the *Challenge*'s engine room bilge overboard multiple times during each fishing voyage and while in port.

20. Defendants' overboard discharges of oily bilge waste enabled Defendants to avoid the cost of proper waste management and disposal and allowed Defendants to stay at sea longer to increase their catch.

**Oil Spill in New Bedford Harbor on August 15-16, 2017**

21. Defendants also discharged diesel fuel into New Bedford Harbor on the night of August 15, 2017, after returning from the fishing voyage that occurred between August 2 and August 13, 2017.

22. Defendants refueled the vessel on the morning of August 15, 2017, while at the docks located at 14 Hervey Tichon Avenue. When completed, the fuel tanks contained approximately 6,800 gallons of fuel.

23. Subject to reasonable opportunity for further investigation or discovery, after refueling and while stilled moored at the docks, Defendant Charles Quinn III, acting as captain of the vessel, turned on the engine room bilge pump and discharged untreated oily mixtures into New Bedford Harbor.

24. Defendant Charles Quinn III turned off the generator when he left for the day but failed to turn off the bilge pumps or shut the engine room bilge valve.

25. Shutting down the generator also turned off the bilge pump. The bilge priming line valve, however, was left open and the engine room bilge suction line was left open.

26. Subject to reasonable opportunity for further investigation or discovery, during the night of August 15 or the early morning of August 16, 2017, the bilge check valve failed, water flowed into the engine room and fish hold, and the vessel sank.

27. As the vessel sank, the fuel tank vents were submerged below the water and diesel fuel discharged into the Harbor.

28. More than 100 barrels (4,200 gallons) of diesel fuel discharged from the vessel into the Harbor.

29. Diesel fuel flowed out of the vessel and contaminated multiple areas of New Bedford Harbor and the Achushnet River, including the shoreline of neighboring Fairhaven.

30. At least 17 ducks were observed oiled, at least five of which died.

31. The full extent of injuries to people and the environment from the oil spill has not yet been quantified.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Civil Penalties for Violations of CWA Section 311(b)(3),
33 U.S.C. § 1321(b)(3) – Discharges of Oil**

32. The preceding paragraphs are incorporated herein.

33. Enforcement of Section 311 of the CWA supports the national objective to prevent and deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1251(a), 1321(b)(1).

34. Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil "into or upon," *inter alia*, "the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . or which may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States (including resources under the Magnuson-Stevens Fishery Conservation and Management Act) in such quantities as may be harmful . . . ."

35. Congress directed the President to determine by regulation "those quantities of oil and any hazardous substance the discharge of which may be harmful to public health or welfare or the environment of the United States." 33 U.S.C. § 1321(b)(4). The President delegated authority to the Administrator of the Environmental Protection Agency under CWA § 311(b)(3) and (b)(4) for determining quantities of oil the discharge of which may be harmful. Exec. Order

No. 12777, Section 8(a), 56 Fed. Reg. 54757, 54768 (1991). The EPA determined that discharges of oil that "violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines" are, for purposes of Section 311(b)(4) of the CWA, discharges of oil in such quantities that may be harmful to the public health or welfare or the environment of the United States. 40 C.F.R. § 110.3.

36. Pursuant to Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any vessel . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ." 33 U.S.C. § 1321(b)(7)(A).

37. Civil penalties will be increased pursuant to Section 311(b)(7)(D) of the CWA if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D).

38. Defendants are each a "person" within the meaning of Section 311(a)(7) of the CWA. 33 U.S.C. § 1321(a)(7).

39. Defendants are the owner, operators, and persons in charge of the vessel from which oil was discharged within the meaning of Section 311(a)(6) of the CWA. 33 U.S.C. § 1321(a)(6). Charles Quinn Jr. also is the responsible corporate officer for these violations.

40. The *Challenge* is a "vessel" within the meaning of Section 311(a)(3) of the CWA. 33 U.S.C. § 1321(a)(3).

41. The release of diesel fuel from the vessel on the night of August 15, 2017 and each time the *Challenge* pumped oily mixtures overboard during and after the voyage of August 2-13, 2017, constitute "discharges" of oil within the meaning of Section 311(a)(2). 33 U.S.C. § 1321(a)(2). For the purposes of Section 311(a)(2) of the CWA, "discharge" is defined to include

7

"any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ," subject to certain specified exceptions not applicable here. 33 U.S.C. § 1321(a)(2).

42. The discharges were of "oil" within the meaning of Section 311(a)(1) of the CWA. 33 U.S.C. § 1321(a)(1).

43. Defendants discharged oil from the *Challenge* into or upon New Bedford Harbor and other navigable waters of the United States, adjoining shorelines, the contiguous zone, and into the ocean offshore of southeastern New England within the exclusive economic zone ("EEZ").

44. Defendants discharged oil from the *Challenge* while the *Challenge* was in New Bedford Harbor.

45. Defendants discharged oil from the *Challenge* while fishing in and traveling through the habitat of numerous types of natural resources within the EEZ. The oil discharges may have affected natural resources, including water, fish, marine mammals, sharks, birds, and biota, belonging to, appertaining to, or under the United States' exclusive management authority.

46. Discharging oil into and upon waters that these species inhabit is known to cause them harm.

47. The oil discharges were in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3.

48. The oil discharges violated Section 311(b)(3) of the CWA. 33 U.S.C. § 1321(b)(3).

49. The oil discharges resulted from Defendants' willful misconduct or gross negligence. Defendants knew discharging oily mixtures overboard is unlawful and knew the vessel's oily waste generation rate exceeded its capacity to retain the waste onboard during

planned fishing voyages. Instead of legally managing the waste stream and operating within the limits of the vessel, Defendants willfully discharged oil while in port and at sea. Discharging oil overboard while fishing enabled the *Challenge* to stay at sea longer to catch more fish, thereby increasing profits, and it allowed Defendants to avoid the costs of proper waste management and disposal. The oil spill on August 15, 2017 was the result of Defendants' gross negligence or willful misconduct, including the willful discharge of oily bilge waste and the failure to shut the engine room bilge valves.

50.	Defendants are each liable for civil penalties of up to $46,192 per day of violation or up to $1,848 per barrel discharged under CWA Section 311(b)(7)(A), or under Section 311(b)(7)(D) if it is proved that the violations are the result of gross negligence or willful misconduct, a minimum of $184,767 and up to $5,543 per barrel discharged. *See* 83 Fed. Reg. 1193 (Jan. 10, 2018) (listing these inflation-adjusted penalty rates for violations occurring after November 2, 2015).

## SECOND CAUSE OF ACTION

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C) – Failure to Have Capacity to Retain Oily Mixtures Onboard**

51.	The preceding paragraphs are incorporated herein.

52.	Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $46,192 per day for each violation pursuant to Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C); *see also* 83 Fed. Reg. 1193 (Jan. 10, 2018) (listing this inflation-adjusted penalty amount for violations occurring after November 2, 2015).

53.	The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.350. Pursuant to 33 C.F.R.

9

§ 155.350, no person may operate an oceangoing vessel less than 400 gross tons unless the vessel: (1) "[h]as the capacity to retain on board all oily mixtures and is equipped to discharge these oily mixtures to a reception facility;" or (2) "[h]as approved oily-water separating equipment . . . ."

54. The *Challenge* is less than 400 gross tons.

55. The *Challenge* does not have an oil-water separating system on board.

56. Defendants operated the *Challenge* during and after the voyage of August 2-13, 2017, without the capacity to retain on board the oily mixtures generated by the vessel. Instead of retaining the oily waste on board, Defendants illegally discharged the waste overboard.

57. Defendants are each liable for civil penalties of up to $46,192 per day for each violation under Section 311(b)(7)(C) of the CWA.

### THIRD CAUSE OF ACTION

### Injunctive Relief under CWA Section 311(e), 33 U.S.C. § 1321(e)

58. The preceding paragraphs are incorporated herein.

59. In addition to civil penalties for the violations identified above, the United States seeks injunctive relief to prevent future discharges of oil from Defendants' vessels and other violations. Section 311(e) of the CWA authorizes the Coast Guard to act when there "may be an imminent and substantial threat[s] to the public health or welfare of the United States . . . because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b)." 33 U.S.C. § 1321(e).

60. Section 311(e)(1)(A) of the Act authorizes the Attorney General to secure "any relief from any person . . . as may be necessary to abate such endangerment." 33 U.S.C.

§ 1321(e)(1)(A). District courts have "jurisdiction to grant any relief under this subsection that the public interest and the equities of the case may require." 33 U.S.C. § 1321(e)(2).

61. Defendants' illegal operational practices described above pose an imminent and substantial threat of additional oil discharges and injuries to the environment and to public health or welfare. Such practices are likely to continue unless corrective measures are imposed by the Court.

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court:

A. Assess civil penalties against each Defendant for the oil discharge violations of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), in the amount of up to $46,192 per day of violation or up to $1,848 per barrel discharged under CWA Section 311(b)(7)(A) or, if it is proved that the violations are the result of gross negligence or willful misconduct, in the amount of at least $184,767 per discharge and up to $5,543 per barrel discharged under Section 311(b)(7)(D);

B. Assess civil penalties against each Defendant of up to $46,192 per day for each violation of the Coast Guard's pollution control regulations promulgated pursuant to CWA Section 311(j), as authorized under Section 311(b)(7)(C);

C. Enjoin Defendants from continuing their illegal oil discharges and order Defendants to perform other appropriate injunctive relief to prevent future oil discharges and related violations;

D. Order Defendants to take all steps necessary to redress or mitigate the impacts of their violations; and

E. Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA:**

*/s/ Jeffrey H. Wood*
JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Jason T. Barbeau*
JASON T. BARBEAU
Senior Trial Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov

ANDREW E. LELLING
United States Attorney

Susan M. Poswistilo (BBO #565581)
Assistant U.S. Attorney
John J. Moakley Federal Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3103
susan.poswistilo@usdoj.gov

Of Counsel:
LCDR Gary Murphy
Office of Claims and Litigation
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213